# SOUTHERN DISTRICT REPORTERS, P.C.

Official Court Reporter
United States Courthouse
500 Pearl Street, Room 330
New York, New York 10007

Tel. (212) 805-0300
Fax (212) 805-0355

GUIDO TASCIONE
JOSEPH QUIÑONES
MARVIN P. BIRNBAUM
MARTHA HESS
ALBERT GORN
VINCENT J. BOLOGNA
JEROME A. HARRISON
SANDRA MIASKOFF
THOMAS W. MURRAY
CAROL E. GANLEY
SAMUEL MAURO
ANN REAGINS-HAIRSTON
TONI STANLEY
PAULA SPEER
KRISTEN J. CARANNANTE
STEVEN J. GRIFFING
JOANNE MANCARI
EVE GINIGER
STEVEN GREENBLUM
PAMELA J. UTTER
WILLIAM RICHARDS
PATRICIA NILSEN
MICHAEL McDANIEL
JENNIFER GEORGE
REBECCA FORMAN
SONYA KETTER HUGGINS
DENISE RICHARDS
MICHELLE T. BULKLEY
KAREN GORLASKI
MARTHA DREVIS
ALENA LYNCH
LINDA FISHER
KHRISTINE SELLIN

## FACSIMILE TRANSMISSION COVER SHEET

DATE: 12/27/07

TIME: 11:44am

TO: Christelle Clement

FROM: Mimi * 0332

NUMBER OF PAGES (Including Cover Sheet): 16

COMMENTS: Kassai v. DrinksAmerica

*If you have received this communication in error, or if any problems occur during transmission, please notify sender at (212) _____ Thank you.*

```
7CH8KASC                                                              1

    UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x
    PHILLIP KASSAI,

                    Plaintiff,

            v.                                  07 Cv. 5590 (RMB)

    DRINKS AMERICA HOLDINGS, LTD.,

                    Defendant.
    ------------------------------x

                                                December 17, 2007
                                                3:50 p.m.
    Before:

                      HON. ANDREW J. PECK

                                                Magistrate Judge

                           APPEARANCES

    MOSKOWITZ & BOOK, LLP
         Attorneys for Plaintiff
    SUSAN J. WALSH

    SHELDON H. GOPSTEIN (by telephone)
         Attorney for Defendant
```

1           (Case called)
2           THE COURT: Mr. Gopstein, can you hear me?
3           MR. GOPSTEIN: Yes, I can, Judge.
4           THE COURT: Let's hope your sound quality continues to
5    come through clearly.
6           Ms. Walsh is here in the courtroom. This conference
7    is in response to her letter of earlier this morning
8    complaining about not having gotten various documents despite
9    your promise to have produced them. So let's take it one issue
10   at a time.
11          One, proof of payments for services rendered to
12   defendants by plaintiff and his former employer.
13          Are there any such documents?
14          MR. GOPSTEIN: Judge, let me preface my comments by
15   telling you where I am and why I am here. I am sitting in my
16   car pulled over on the side of the road on the way back from a
17   deposition in this very case that I took today.
18          THE COURT: How is it that Ms. Walsh managed to get
19   back here for this conference but you had to participate
20   telephonically?
21          MR. GOPSTEIN: Because she left while I was still
22   deposing a witness. I don't know why she did that. I guess
23   she had other matters to attend to with another judge, and I
24   think that's why she left.
25          THE COURT: All right. I never heard of a deposition

7CH8KASC                                                                3

```
 1   going on without one side present but so be it.  If you're not
 2   able to deal with this today --
 3            MR. GOPSTEIN:  I am.  I just wanted to give you little
 4   bit of perspective, and I will be more than happy to address
 5   whatever questions you may have.
 6            THE COURT:  Basically, there are a ton of documents in
 7   various categories that have been outstanding for months, and
 8   according to Ms. Walsh's letter, but to put it in my terms, she
 9   is getting the "the documents are in the mail" sort of story.
10            What's going on?
11            MR. GOPSTEIN:  This is pure nonsense.  She knows very
12   well, as I have told her innumerable times, that the documents
13   she is requesting either do not exist or have already been
14   produced.  I have no idea why she saw fit to write this letter
15   to you, not to give me any notice of it, not to even discuss
16   these issues with me and basically tell me about the letter,
17   not even hand it to me to tell me about the letter in the midst
18   of the deposition.  I then get a copy of this letter faxed to
19   me at Sloan Securities in the middle of the deposition.  I
20   first read it about 3:00, and I can tell you categorically it's
21   pure nonsense.
22            Let's take it one at a time.  The proof of payments
23   for services rendered, there has been sworn testimony from at
24   least two witnesses now that make it very clear that Sloan
25   Securities did not get their fees from the net proceeds.  My
```

1  client wrote no checks, sent no wire transfers. Whatever money
2  was collected was collected under Sloan Securities' escrow
3  account and they were wired by Sloan Securities to themselves
4  in payment for their own fees.
5      THE COURT: Move on to the next category. E-mails.
6      MR. GOPSTEIN: We have given her all e-mails that we
7  could find.
8      THE COURT: Was that done with an adequate search?
9  Who did the search?
10     MR. GOPSTEIN: Yes. My client testified at length
11 about the search. He instructed the people in his office to
12 look for the e-mails and to look for all responsive documents.
13 This is what they came up with. It's a very small
14 organization. We are not talking about a big bureaucracy here.
15 He basically told his people we need to find these documents
16 and this is what he came up with, and he gave her, as a matter
17 of fact, most of the e-mails, if not all. I don't want to say
18 anything that's incorrect, but I believe most of the e-mails
19 were actually produced pursuant to the initial Rule 26
20 disclosures.
21     THE COURT: Ms. Walsh, on the first two categories,
22 anything else to be said?
23     MS. WALSH: Yes. In response to the first two
24 categories?
25     THE COURT: Yes. Make sure you're speaking loudly and

7CH8KASC                                                                 5

into the microphone so that Mr. Gopstein can hear you.

MS. WALSH: I will just respond briefly to the transmittal. I have other people working --

THE COURT: I don't care. Just tell me whether I can move on to category three and you accept the representations on one and two, and if not, what I am supposed to do about this.

MS. WALSH: There has been testimony that fees were deducted automatically out of Sloan Securities' escrow account, but it seems to me implausible that the people --

THE COURT: It may be implausible, but if you're getting a representation from opposing counsel that there are no such documents, verify that at whatever depositions are left or prove to the contrary that Mr. Gopstein misspoke and then go for sanctions. Otherwise, when somebody says there are no documents, that may be hard to stomach, but there is nothing the Court can do. I can't order someone to produce documents that they say don't exist.

MS. WALSH: With respect to the e-mails, your Honor, there was a representation made to me that some of the e-mails were considered by counsel to be privileged.

THE COURT: That's another story. We will get to the privilege log at the end of the other categories.

Anything else on the e-mails?

MS. WALSH: Yes. At the deposition of the chairman of the board, Mr. Bruce Klein, who I concede was not the 30(b)(6)

7CH8KASC                                                                6

1   witness for the corporation, he testified at page 36 of his
2   deposition that he has communicated with people by e-mail and
3   that he had not conducted a search of his e-mail account.
4           THE COURT: Mr. Gopstein, do you want to address that?
5           MR. GOPSTEIN: Yes, your Honor. That is one of the
6   documents that has not been produced in this case by Sloan
7   Securities and he so testified today, which is precisely the
8   reason why after today's deposition, which I haven't even
9   gotten back to my office from, I may write you a letter
10  requesting that discovery be extended through January 31. We
11  desperately need additional time. Sloan said they haven't had
12  an adequate opportunity or haven't been able to or whatever
13  they said, they just haven't produced all their documents.
14          THE COURT: Slow down everyone. Wait. Stop.
15          Who does Klein work for?
16          MS. WALSH: I think there is a confusion of the
17  parties. Maybe I didn't make it clear.
18          Mr. Gopstein, the deposition that I am referencing is
19  the testimony of Mr. Bruce Klein, who is the chairman of the
20  board of the defendant's company. He was deposed on November
21  20 and referenced that he had made communications by e-mail and
22  that he had not been requested to have done any kind of search
23  prior to testifying. I have not received any e-mails or any
24  response to the follow-up document request which I submitted
25  subsequently.

```
7CH8KASC                                                          7
```

1    MR. GOPSTEIN:  I am not sure what you're referring to.
2    I can't produce anything that I don't have.
3        THE COURT:  Either pay attention or you're wasting my
4    time.  According to Ms. Walsh, one of your witnesses said
5    nobody searched his e-mail account.  Is that correct or
6    incorrect?
7        MR. GOPSTEIN:  I don't recall that testimony.
8        THE COURT:  OK.  Here is what I want.  I want an
9    affidavit from whoever did the search of exactly where searches
10   for e-mails were done, by who, whose e-mail accounts, personal
11   accounts, business accounts.  I want a full compliance
12   affidavit, and I want it by Wednesday.  End of discussion on
13   e-mails.  And if there are any e-mails that get found as a
14   result of that, produce them simultaneously.
15       In addition, I want a privilege log by Wednesday or
16   there is no privilege.
17       Is that clear, Mr. Gopstein?
18       MR. GOPSTEIN:  Well, that's a lot of work to do by
19   Wednesday.  I don't know that I can do that.
20       THE COURT:  You're right, it is a lot of work.
21       Counsel, if you interrupt me one more time, I will
22   have you drive in if I have to stay here till 7:00.
23       Why was it not done previously, or to put it another
24   way, why shouldn't I say the privilege is waived?  The local
25   rules are very clear on this.  Why did you not do a privilege

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7CH8KASC                                                                             8

1   log?
2           MR. GOPSTEIN:  I think that is one of the things that
3   we both need to do.  I would agree with that.
4           THE COURT:  Wednesday is the date.  No discussion.
5   Stay up all night.  If college kids can do it, so can you.
6           Discovery ends December 31.  I am not going to be here
7   after the 21st.  You're going to get this done.
8           MR. GOPSTEIN:  I need to make an application to the
9   Court.  If you deny my application, I will pursue it further.
10  I can only do what I need to do to represent my client.  I can
11  tell you for sure, your Honor, we cannot complete discovery by
12  December 31.
13          THE COURT:  Life is tough.  Then you can take
14  objections to Judge Berman.  I have denied the request
15  previously I believe.  I gave you a one-month extension once
16  before.  Enough is enough, guys.
17          MR. GOPSTEIN:  Your Honor, this case has been on a
18  super fast track.  I am not sure why.  I can tell you that --
19          THE COURT:  Mr. Gopstein, I have ruled.  I really
20  don't want to hear any sort of, Gee, Judge, the dog ate my
21  homework.  If you want to take objections to Judge Berman, be
22  my guest.  As far as I am concerned, discovery closes December
23  31, absent an order from Judge Berman overruling what I have
24  just ruled.  If you have something other than you're tired,
25  you're busy, whatever, make the argument, but don't tell me

        that I am pushing the case too fast.

              MR. GOPSTEIN:  Can I make the argument that I have?

              THE COURT:  The argument that you want to make to Judge Berman make to Judge Berman. Any argument you want me to rule on better be within the guidelines I have just given you.

              MR. GOPSTEIN:  That's precisely what I wanted to say. I was going to wait until we resolved my adversary's motion, but let me just tell you, the gist of what I was going to say to your Honor is that we have gotten testimony just today, a few hours ago, from Sloan Securities telling us they can't produce documents until January. Let me rephrase that. They can't complete their production of documents until January.

              THE COURT:  When were they subpoenaed?

              MR. GOPSTEIN:  I don't have the file. I am sitting in my car. I believe the end of November.

              THE COURT:  There is no reason they shouldn't comply by the end of December.

              MR. GOPSTEIN:  They just told me that they cannot and they will not until January.

        Let me go on to my second point. I have been trying to get bank records from Signature Bank in relation to our counterclaim. The counterclaim is that they diverted funds away from my client. They took money from investors --

              THE COURT:  Counsel, when did you ask Signature Bank for documents?

1   MR. GOPSTEIN: I have been talking to them for, let me
2   just say, several weeks. I couldn't serve them with a subpoena
3   because they called the bank officer first and asked them what
4   he could possibly produce and in what time frame, and he was
5   nice enough to just get on his computer and say, you know what,
6   don't even bother sending me a subpoena because I don't have
7   any record of any accounts with the name of Sloan Securities or
8   Drinks America or anything. Today I specifically requested the
9   account numbers and the titles of those accounts because
10  Signature Bank apparently has no record of this for some reason
11  or another. I don't know why. So until I get the information
12  as to the title of the account and the account numbers, I can't
13  even serve the subpoena.
14      THE COURT: Life is tough.
15      Next.
16      MR. GOPSTEIN: What does that mean? I don't
17  understand what that means.
18      THE COURT: I will be less facetious. You were given
19  a scheduling order on July 26 with a December 1 discovery
20  cutoff. You asked for more time on September 10, at a point
21  where you had basically done nothing, and I gave you the month.
22  That's it. You want to make a written motion showing me what
23  you have done from July 26 to date, I will consider it.
24  Obviously, I probably will not rule on it, unless you get it in
25  before this Thursday or Friday, until after the New Year, at

7CH8KASC 11

1 which point it may well still be denied. At the moment I don't
2 hear good cause. I hear whining.
3     MR. GOPSTEIN: You hear whining. OK.
4     I deeply disagree with that mischaracterization, but
5 let's move on.
6     THE COURT: OK. Next. Minutes of board meetings of
7 defendant. Have they been produced, yes or no?
8     MR. GOPSTEIN: That is the one thing that is
9 outstanding. My client tells me that they can't seem to find
10 this one board resolution. After the fact it may not be
11 relevant, but we are going to produce it anyway. They need to
12 find that and produce it and they haven't done that yet.
13     THE COURT: How long have they been searching for this
14 needle in a haystack?
15     MR. GOPSTEIN: I don't know.
16     THE COURT: I have the feeling that you're either
17 going to have to produce it before the 31st or face the
18 possibility that Judge Berman will give the jury an adverse
19 inference from its failure to be found. So if that doesn't
20 encourage your client to get off their rear end and find it, I
21 don't know what will.
22     Item four is another e-mail. That will be taken care
23 of by the e-mail compliance affidavit.
24     Five is underlying work sheets or documents including
25 check or bank records. Are there any such things?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1           MR. GOPSTEIN: They have no bank records because the
2    money went directly to Sloan from Sloan.
3           THE COURT: Got you. So your biggest missing piece is
4    the e-mail and you're going to get me a compliance affidavit by
5    close of business Wednesday.
6           MS. WALSH: May I just elaborate on number five
7    because I paraphrased and I don't want there to be any
8    miscommunication between myself, counsel and the Court.
9           The company publishes what is known as a 10-K
10   prospectus of course, a public document. What I have been
11   asking for and trying to phrase in various different ways is
12   the underlying work sheets and breakout sheets from which the
13   summary calculation that's published as a matter of public
14   record has been tabulated.
15          THE COURT: That doesn't make any sense.
16          MS. WALSH: There are summary calculation sheets in
17   the 10-K.
18          THE COURT: Have you deposed anybody? The accounting
19   records from which companies put out 10-Ks and 10-Qs is
20   basically every corporate transactional document. So I don't
21   know what you want.
22          MS. WALSH: I am only looking for those that are
23   related to this transaction with Sloan equities. I am only
24   looking for them that are related to one or two investment
25   banking agreements.

```
7CH8KASC                                                              13
```

1  THE COURT: I don't understand what you want. Why
2  don't you and Mr. Gopstein talk about it? He says there is
3  nothing because nothing was paid to the plaintiffs. You two
4  work it out. It's an incomprehensible request in the way I
5  have it in the letter.
6  Anything else from the plaintiff? And then I will go
7  to any other issues from the defendant.
8  MS. WALSH: No, your Honor.
9  THE COURT: Anything else, Mr. Gopstein? Any
10 discovery issues? This may be your last chance.
11 MR. GOPSTEIN: Well, considering the fact that I
12 didn't call this conference or had no opportunity whatsoever to
13 prepare for it, I cannot tell you off the top of my head what
14 outstanding discovery issues there are. I can tell you
15 categorically we cannot complete discovery in a fair and
16 reasonable manner by the end of this month and it would
17 prejudice my client to insist that we do so.
18 THE COURT: Notify your malpractice carrier as well as
19 filing your objections with Judge Berman.
20 MR. GOPSTEIN: This has nothing to do with
21 malpractice, Judge. This has to do with setting a reasonable
22 time frame for discovery.
23 THE COURT: Mr. Gopstein, do you really think that
24 arguing with me is going to make me change my mind? I have
25 ruled on it. I don't care whether you understand it or not,

1  sir. If you have any issues, I will leave it where I left it
2  at the last conference. If anybody has any issues, they know
3  where to find me. If I do not hear from you by December 31st
4  at the close of business, then discovery is over, subject to
5  any ruling from Judge Berman. File your objections according
6  to the rules with Judge Berman. Do you want me to remind you
7  of the rules or do you know them?
8      MR. GOPSTEIN: No, thank you.
9      THE COURT: OK. Then I am going to require both sides
10 to purchase the transcript, and with that, we are adjourned.
11     I will leave the line open for a moment, Mr. Gopstein,
12 so you can make your arrangements with the reporter.
13     I do remind you that if I do not have a privilege log
14 from you by close of business Wednesday, or such other
15 extension as you and Ms. Walsh may agree upon to suit both of
16 your conveniences, then both sides will lose the privilege for
17 anything that is not logged.
18     MR. GOPSTEIN: Did you want the privilege logs filed
19 or is it sufficient that we exchange it? Usually those things
20 are not filed according to my understanding.
21     MS. WALSH: Normally they are not filed, but given
22 this discovery cutoff and just --
23     THE COURT: I will leave it another way, which is I am
24 not going to read it and rule on it unless somebody objects to
25 the other side's privilege. On the other hand, if it isn't in

```
7CH8KASC                                                        15
```

1  each of your respective hands by 5:00 on Wednesday or such
2  other time as you each agree upon, then somebody should pick up
3  the phone, or rather write a letter and say, I don't have the
4  other side's privilege log.
5      We will leave it at that. You merely exchange them.
6  If you two want to extend that, you better do it by writing.
7  And if there isn't a privilege log from one side or both by
8  Wednesday, or such additional time as you decide to give each
9  other within the December 31 period, then there will be a
10 waiver of the privilege.
11     We are adjourned.
12     (Adjourned)