## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

| | |
|---|---|
| PHILLIP KASSAI, | : |
| | :  CIVIL ACTION NO. |
| | : 07-cv-5590 (RMB) |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| | : |
| DRINKS AMERICAS HOLDINGS, LTD., | : |
| | : |
| | : |
| Defendant. | : |

-----------------------------------------------------------------X

## DECLARATION OF   J. PATRICK KENNY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, J. Patrick Kenny, declare pursuant to 28 U.S.C § 1746 as follows:

1.  I am the Chief Executive Officer of Drinks Americas Holdings, Ltd. ("Drinks Americas").

2.  I submit this Declaration in support of Defendant's motion for summary judgment.  I have personal knowledge of the facts giving rise to the instant litigation.

3.  On or about December 27, 2004, Drinks Americas entered into an Investment Banking Agreement ("the 2004 IBA") with Sloan Securities Corp. ("SSC"), by which SSC agreed to seek financing for Drinks Americas in the range of six to ten million dollars for equity or equity-linked securities of Drinks Americas.  See Exhibit A:  2004 IBA.

4.  The 2004 IBA also contemplated that prior to the consummation of the equity financing, SSC would seek to provide bridge financing to Drinks Americas for up to $550,000 on terms set forth in a Bridge Financing Term Sheet attached to the 2004 IBA.  See Exhibit B: Bridge Financing Term Sheet.

5. The 2004 IBA clearly distinguishes between equity financing (referred to in the agreement as "Financing") and bridge financing (referred to in the agreement as "Bridge Financing").

6. Section 4.1.(a) of the 2004 IBA provides that SSC's remuneration for successful procurement of equity financing would be 5% of the financing amount, as well as a number of warrants to purchase Drinks Americas securities equal to 5% of the securities issued to investors in the financing.

7. The 2004 IBA also contains a provision specifically addressing SSC's remuneration for procuring bridge financing to Drinks Americas, as opposed to equity financing.  Section 4.1.(b) of the 2004 IBA expressly provides that upon closing of a bridge financing, SSC would be paid 10% of the amount procured for bridge financing.  Under this section, SSC is not entitled to receive any warrants whatsoever as compensation for its services.

8. The Bridge Financing Term Sheet attached to the 2004 IBA ("the Bridge Financing Term Sheet") provides that the target amount of the bridge financing was $550,000 and describes the proposed investment vehicles as "Senior Convertible Promissory Notes" and "Warrants".

9. The Bridge Financing Term Sheet expressly provides a conversion price for the Senior Convertible Promissory Notes as well as an exercise price for the Warrants to be issued to secure the Bridge Financing.  The Bridge Financing Term Sheet also repeats the terms of SSC's agreed-upon remuneration for procuring such bridge financing (i.e. 10% of the principal amount of Notes issued in the bridge financing).

10. On or about February 24, 2005, Drinks Americas and SSC amended the 2004 IBA to increase the amount of bridge financing sought from $550,000 to $1,000,000. See Exhibit C.

11. Between December 27, 2004 and May 5, 2005, SSC procured bridge financing to Drinks Americas, for a total amount of $1,350,000 in the form of Senior Convertible Promissory Notes as described in the Bridge Financing Term Sheet.

12. Between March 9, 2005 and May 5, 2005, SSC caused five wire transfers to be made to Drinks Americas' account, representing the amount of money collected for the bridge financing, minus the amount of SSC's 10 % commission for a total of $135,000.  See Exhibit D: Ackerman deposition, page 51, l. 12 et seq.  See Exhibits F through J: wire transfer orders.

13. On or about May 9, 2005, four days after the last bridge financing monies had been wired to Drinks Americas, Daniel Myers, then SSC's managing director of investment banking, invited Bruce Klein, the non-executive Chairman of Drinks Americas, to come to his office and asked him to sign a Stock Purchase Warrant. See Exhibit K: affidavit of Daniel Myers dated December 12, 2007 ¶ 6.

14. Relying on Daniel Myers's representation that SSC had earned the right to the issuance of warrants under the 2004 IBA, Bruce Klein signed the Stock Purchase Warrant ("the 2005 Warrant").  See Exhibit M: Bruce Klein deposition p. 148, lines 7 et seq.

15. Bruce Klein, although the Chairman of the Board of Directors of Drinks Americas, was not an executive officer of Drinks Americas and as such had no authority to sign the 2005 Warrant.

16. Shortly after signing the 2005 Warrant, Bruce Klein informed our securities counsel, Joseph Cannella, that he had signed a Stock Purchase Warrant in favor of

Sloan Equity Partners, an affiliate of SSC. Joseph Cannella immediately informed Mr. Klein and myself that no warrants were due to SSC since they had procured bridge financing and not equity financing.

17. Shortly after the 2005 Warrant was signed, Joseph Cannella communicated with SSC's attorney, Mark Coldwell, of Littman Krooks LLP about the wrongful issuance of the 2005 Warrant. I am told that Mr. Coldwell acknowledged that the 2005 Warrant had been presented for Bruce Klein's signature by mistake and represented that it would be destroyed.

18. Based upon Drinks Americas' understanding that the wrongful issuance of the 2005 Warrant had been resolved and was a non-issue, the parties moved on and continued to do business.

19. In October 2005, the companies signed a second investment banking agreement ("the 2005 IBA"). See Exhibit N. We would not have entered into an additional investment banking agreement with SSC if we had been aware at that time that SSC, SEP or any of their employees would later make claims under the erroneous and invalid 2005 Warrant.

20. SSC failed to procure any investors for Drinks Americas under the terms of the 2005 IBA.

21. On December 15, 2006, James Ackerman, on behalf of SSC, sent a letter to Drinks Americas requesting that Drinks Americas re-issue the May 2005 Warrant to SSC, "the registered broker-dealer". See Exhibit P.

22. On January 25, 2007, Daniel Myers, on behalf of SEP, sent a letter to Drinks Americas requesting that the 2005 Warrant be assigned to four individuals, including Plaintiff Philip Kassai, and that it be simultaneously exercised.

23. On April 2, 2007, James Ackerman, on behalf of SSC, sent a letter to Drinks Americas requesting that 217,500 shares of Drinks Americas be issued to SSC as a result of SSC's raising $1,350,000 under the 2004 IBA.  SSC also requested that 78,300 of these shares be issued to Plaintiff Philip Kassai directly.

24. Drinks Americas has refused to issue any shares or warrants to SSC, SEP, or their purported assignees because no warrants were ever due under the 2004 IBA, and the 2005 Warrant is invalid.

I declare under penalty of perjury that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Executed this 28th day of March, 2008 in Wilton, Connecticut.

J. Patrick Kenny