# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

PHILLIP KASSAI,

                Plaintiff,

    -against-

DRINKS AMERICAS HOLDINGS, LTD.,

                Defendant.

CIVIL ACTION NO.
07-cv-5590 (RMB)

Honorable Richard M. Berman

---------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF SHELDON H. GOPSTEIN, ESQ.
130 West 42nd Street, Suite 410
New York, NY 10036
Tel. (212) 363-2400

*Attorneys for Defendant/Counterclaimant*
*Drinks Americas Holdings, Ltd.*

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | p. iii |
| PRELIMINARY STATEMENT | p. 1 |
| PROCEDURAL HISTORY | p. 2 |
| STATEMENT OF FACTS | p. 3 |
| SUMMARY JUDGMENT STANDARD | p. 9 |
| ARGUMENT | p. 9 |
| I.  Plaintiff's cause of action for breach of contract under the 2004 IBA should be dismissed | p. 9 |
|     *1. Plaintiff is not a party to, or a third-party beneficiary of, the 2004 IBA* | p. 10 |
|     *2. By its own actions, SSC admitted that it was never entitled to receive warrants under the 2004 IBA* | p. 11. |
| II.  Plaintiff's cause of action for breach of contract under the 2005 Warrant should be dismissed | p. 12 |
|     1.  Plaintiff is not a party to, a third-party beneficiary of, or an assignee of the 2005 Warrant | p. 13 |
|     2.  The 2005 Warrant is unenforceable | p. 14 |
| III. Defendant Has Not Been Unjustly Enriched | p. 14 |
| CONCLUSION | p. 15 |

# TABLE OF AUTHORITIES

**CASES**

| | |
|---|---|
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986) | p.9 |
| Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573 (2d Cir. 2006) | p.15 |
| Cauff, Lippman & Co. v. Apogee Finance Group, Inc., 807 F.Supp. 1007 (S.D.N.Y.1992) | p.11 |
| Celotex v. Catreet, 477 U.S. 317, 106 S. Ct. 2548 (1986) | p.9 |
| City of Yonkers v. Otis Elevator Co., 844 F.2d 42 (2d Cir. 1988) | p.15 |
| Clark-Fitzpatrick, Inc. v. Long Island R. Co, 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987) | p.15 |
| Clark v. Daby, 300 A.D.2d 732, 751 N.Y.S.2d 622 (3d Dept. 2002) | p.14 |
| Eaton Vance Management v. Forstmann Leff Associates, LLC, Not Reported in F.Supp.2d, 2006 WL 2331009, S.D.N.Y., 2006 | p.10 |
| Eaves Brooks Costume Co. v. Y.B.H. Realty Corp., 76 N.Y.2d 220 (1990) | p.10 |
| Glicksman v. New York City Environmental Control Bd., Slip Copy, 2008 WL 282124 (S.D.N.Y., 2008) | p.9 |
| Highlands Ins. Co. v. PRG Brokerage, Inc., No. 01 Civ. 2272(GBD), 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) | p.10 |
| In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F.Supp. 712 (S.D.N.Y.1989) | p.11 |
| In re: Mid Island Hosp. ,Inc. 276 F.3d 123 (2d Cir. 2002) | p.14 |
| Port Chester Electrical Constr. Corp. v. Atlas, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (N.Y.1976) | p.11 |
| Transatlantic Rapid System v. Decoulos, 270 A.D. 987, 62 N.Y.S.2d 529 (1st Dept. 1946). | p.14 |
| Wells Fargo Bank Northwest, N.A. v. Energy Ammonia Transp. Corp., No. 01 Civ. 5861(JSR), 2002 WL 1343757 (S.D.N.Y. June 18, 2002) | p.10 |

**RULES**

Fed. R. Civ. P. 56 (c)     p.9

Fed. R. Civ. P. 56(e)     p.9

FINRA Conduct Rule 2420     p.13

**PRELIMINARY STATEMENT**

Defendant, Drinks Americas Holdings, Ltd. ("Drinks Americas" or "Defendant"), respectfully submits this Memorandum of Law in support of its motion for summary judgment.

The current dispute stems from an investment banking agreement dated December 27, 2004 between Drinks Americas and a third-party investment banking firm named Sloan Securities Corp. ("SSC"). Plaintiff Phillip Kassai ("Kassai") was an employee of SSC at that time and up until June 2006. Kassai believes that under the December 27, 2004 investment banking agreement between Drinks Americas and SSC ("the 2004 IBA"), he has personally earned the right to receive warrants for 78,300 common shares of Drinks Americas.

Plaintiff also claims that he is entitled to be issued warrants for 109,200 common shares of Drinks Americas as a result of a Stock Purchase Warrant, dated May 9, 2005, issued by Drinks Americas in favor of another third-party entity, Sloan Equity Partners, LLC ("SEP"), of which Plaintiff is a managing member ("the 2005 Warrant").

Summary judgment is appropriate for the following reasons:

First, Plaintiff lacks standing to bring any cause of action against Defendant under the 2004 IBA because he is neither a party to it nor a third-party beneficiary of it. Even if Plaintiff could somehow claim standing, SSC admitted by its own actions that it was not entitled to receive warrants under the 2004 IBA.

Second, Plaintiff similarly lacks standing to bring any cause of action against Defendant under the 2005 Warrant because it too arose, albeit in error, from the same 2004 IBA. The 2005 Warrant is also invalid as a matter of law because it was issued to

1

SEP, which by its own admission is not a registered broker-dealer and as such was prohibited from receiving compensation that could only be lawfully paid to SSC. The 2005 Warrant could therefore not possibly have been and was in fact never assigned to Kassai. Finally, the 2005 Warrant was signed in error as it is clear by SSC's own admission that it was issued based on the 2004 IBA and that no warrants were due to SSC (or SEP) under the 2004 IBA.

Significantly, neither SSC nor SEP have filed any claim against Drinks Americas for the issuance of any shares or warrants. Defendant notes that Plaintiff did not frame his complaint as a derivative action and that all of his claims are made strictly in his individual capacity limited to the amount of shares he personally claims to be due to him.

There are no material facts in dispute which would preclude summary judgment as a matter of law. No evidence whatsoever has emerged to support any cause of action Plaintiff has alleged against Defendant. Summary judgment is appropriate dismissing the Complaint herein with prejudice.

## PROCEDURAL HISTORY

Plaintiff instituted the instant action on June 12, 2007. This Court has subject matter jurisdiction because the dispute arises between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Defendant filed an answer denying the allegations of the complaint, asserted affirmative defenses and filed counterclaims alleging that Kassai, acting in concert with two other individuals, Messrs. Daniel Myers and James Ackerman, diverted and secreted over $500,000 in funds sent to SSC by investors intending to purchase securities of Drinks Americas.

2

Discovery has been completed. This matter is now ripe for summary judgment on Plaintiff's complaint. The instant motion does not address Defendant's counterclaims.

### STATEMENT OF FACTS

Defendant Drinks Americas is a publicly traded company which produces, markets and distributes alcoholic and non-alcoholic beverages. On or about December 27, 2004, Drinks Americas entered into an Investment Banking Agreement ("the 2004 IBA") with third-party SSC, by which SSC agreed to seek financing for Drinks Americas in the range of six to ten million dollars for equity or equity-linked securities of Drinks Americas. See Exhibit A ¶ 1.2. The 2004 IBA also contemplated that prior to the consummation of the equity financing, SSC would seek to provide bridge financing to Drinks Americas for up to $550,000 on terms set forth in a Bridge Financing Term Sheet attached to the 2004 IBA. See Exhibit A ¶ 1.2.

The 2004 IBA clearly distinguishes between equity financing (referred to in the agreement as "Financing") and bridge financing (referred to in the agreement as "Bridge Financing"). See Exhibit A ¶ 1.4.

Section 4.1.(a) of the 2004 IBA provides that SSC's remuneration for successful procurement of equity financing would be 5% of the financing amount, as well as a number of warrants to purchase Drinks Americas' securities equal to 5% of the securities issued to investors in the financing. See Exhibit A ¶ 4.1 (a)

Importantly, the 2004 IBA also contains a provision specifically addressing SSC's remuneration for procuring bridge financing to Drinks Americas, as opposed to equity financing. Section 4.1.(b) of the 2004 IBA expressly provides that upon closing of a bridge financing, SSC would receive 10% of the amount procured for bridge financing.

See Exhibit A ¶ 4.1.b.   It is of particular relevance to note that under this section, SSC is not entitled to receive any warrants whatsoever as compensation for its services.

The Bridge Financing Term Sheet attached to the 2004 IBA ("the Bridge Financing Term Sheet") provides that the target amount of the bridge financing is $550,000 and describes the proposed investment vehicles as "Senior Convertible Promissory Notes" and "Warrants".  See Exhibit B.

The Bridge Financing Term Sheet expressly provides a conversion price for the Senior Convertible Promissory Notes as well as an exercise price for the Warrants to be issued to secure the Bridge Financing.  The Bridge Financing Term Sheet also repeats the terms of SSC's agreed-upon remuneration for procuring such bridge financing, i.e. 10% of the principal amount of Notes issued in the bridge financing.  See Exhibit B.

On or about February 24, 2005, Drinks Americas and SSC amended the 2004 IBA to increase the amount of bridge financing sought from $550,000 to $1,000,000.  See Exhibit C.

Between December 27, 2004 and May 5, 2005, SSC procured bridge financing to Drinks Americas, for a total amount of $1,350,000 in the form of Senior Convertible Promissory Notes as described in the Bridge Financing Term Sheet.   Both James Ackerman, SSC's Chief Executive Officer, and Plaintiff Phillip Kassai acknowledge that the lenders procured by SSC were issued Senior Convertible Promissory Notes.  See Exhibit D: Ackerman deposition, page 51, l. 12 et seq.  See Exhibit E: Kassai deposition, page 79, l. 21 et seq.

Consistent with the precise terms of section 4.1.(b) of the 2004 IBA and the Bridge Financing Term Sheet, SSC caused itself to be paid 10% of the amount of bridge

4

financing raised by SSC ($135,000). The evidence produced by Plaintiff shows that from March 9, 2005 to May 5, 2005 SSC caused five wire transfers to be made from the escrow account where the bridge financing money had been deposited by the various lenders into Drinks Americas' account. Each and every time SSC ordered said wire transfers, SSC also caused 10% the monies received from the bridge financing lenders to be wired into SSC's account, for a total of $135,000 – exactly 10%.[1]

See Exhibit F: Wire transfer order, dated March 9, 2005, for the transfer of $390,000 to Drinks Americas and $50,000 to SSC (+ $5,000 to SSC's attorneys Littman Krooks);

Exhibit G: Wire transfer order, dated March 21, 2005, for the transfer of $364,000 to Drinks Americas and $41,000 to SSC (+ $5,000 to SSC's attorneys Littman Krooks);

Exhibit H: Wire transfer order, dated April 5, 2005, for the transfer of $153,000 to Drinks Americas and $17,000 to SSC;

Exhibit I: Wire transfer order, dated April 15, 2005, for the transfer of $162.000 to Drinks Americas and $18,000 to SSC

Exhibit J: Wire transfer order, dated May 5, 2005, for the transfer of $81.000 to Drinks Americas and $9,000 to SSC.

In his deposition, James Ackerman, the CEO of SSC, acknowledged that SSC had received all of the cash commissions due under the 2004 IBA. See Exhibit D: Ackerman deposition, page 52-54, lines 24 et seq.

On or about May 9, 2005, four days after the last bridge financing monies had been wired to Drinks Americas, Daniel Myers, then SSC's managing director of

---

[1] Although SSC received its exact 10% commission for the bridge financing based on the total raise of $1,350,000, Drinks Americas' net proceeds were reduced by payments made to attorneys and other brokers.

investment banking, asked SSC's counsel to prepare a Stock Purchase Warrant for 300,000 shares of Drinks Americas' common stock. He then invited Bruce Klein, the non-executive Chairman of Drinks Americas, to come to his office and asked him to sign the Stock Purchase Warrant. See Exhibit K: affidavit of Daniel Myers dated December 12, 2007 ¶ 5.

Significantly, Daniel Myers admits in his affidavit that he prepared the Stock Purchase Warrant in the belief that SSC was entitled to receive warrants for the work it had just done in raising $1,350,000 for Drinks Americas. See Exhibit K: affidavit of Daniel Myers dated December 12, 2007 ¶ 6.

Relying on Daniel Myers's representation that SSC had earned the right to the issuance of warrants under the 2004 IBA, Bruce Klein signed the Stock Purchase Warrant ("the 2005 Warrant"). See Exhibit M: Bruce Klein deposition p. 148, lines 7 et seq.

The 2005 Warrant provides for the issuance of 300,000 shares of Drinks Americas to SEP (not SSC) under certain terms and conditions. See Exhibit L.

Bruce Klein, although the Chairman of the Board of Directors of Drinks Americas, was not an executive officer of Drinks Americas. See Affidavit of Patrick Kenny ¶ 15.

Shortly after signing the 2005 Warrant, Bruce Klein communicated with Joseph Cannella, securities counsel for Drinks Americas. Joseph Cannella immediately informed Mr. Klein that no warrants were due to SSC since they had procured bridge financing and not equity financing, and they had already been paid in full. See Exhibit M: Bruce Klein deposition p. 149, lines 10 et seq.

Joseph Cannella communicated with SSC's attorney, Mark Coldwell, of Littman

6

Krooks LLP about the wrongful issuance of the 2005 Warrant. Mr. Coldwell acknowledged that the 2005 Warrant had been presented for Bruce Klein's signature by mistake and represented that it would be destroyed.

In his deposition, James Ackerman, SSC's CEO and also a member of SEP, recognized that nothing in the 2004 IBA entitled either SSC or SEP to receive 300,000 warrants. See Exhibit D: Ackerman deposition, page 72, line 20:

> Q. So the [May 2005 Warrant] could only have related to the prior investment banking agreement from December of 2004, correct?
> A. Correct.
> Q. All Right. Try then to the best of your abilities to explain to me where or how under the 2004 investment banking agreement Sloan Securities or Sloan Equity Partners were entitled to warrants for 300,000 shares.
> A. I don't see anything under here.

Moreover, in his deposition, James Ackerman acknowledged that the warrants were further invalidated by the fact that SEP is not authorized under FINRA regulations to receive payment of commissions for financing services. See Exhibit D: Ackerman deposition, page 23, line 3 - "Sloan Equity Partners was erroneously issued a stock warrant for 300,000 warrants"- and page 27, line 17:

> A. Compensation has to come to a broker dealer. Then a broker dealer can pay registered reps as it sees fit, but only registered people.
> Q. But the compensation must be initially paid to the broker dealer?
> A. Right.
> (..)
> Q. And it is your understanding that it would be a violation of FINRA rules for the warrant to be paid directly to Sloan Equity Partners?
> A. Yes. Because Sloan Equity Partners is not a registered entity.

Based upon Drinks Americas' understanding that the wrongful issuance of the 2005 Warrant had been resolved and was a non-issue, the parties moved on and continued to do business. In October 2005, the companies signed a second investment

7

banking agreement ("the 2005 IBA"). See Exhibit N.  SSC failed to procure any investors for Drinks Americas under the terms of the 2005 IBA.

Plaintiff Philip Kassai resigned from his employment with SCC on June 15, 2006. Exhibit O: termination agreement.

SSC terminated the employment of Daniel Myers in August 2006 following allegations that Mr. Myers had violated SSC's supervisory procedures as well as FINRA rules.  See Exhibit D: Ackerman Deposition, p. 29, lines 13 et seq.

On December 15, 2006, James Ackerman, on behalf of SSC, sent a letter to Drinks Americas requesting that Drinks Americas re-issue the May 2005 Warrant to SSC, "the registered broker-dealer". See Exhibit P.

Drinks Americas properly refused to re-issue the May 2005 Warrant, since SSC had been paid its full commission for raising bridge financing.

On January 25, 2007, Daniel Myers, on behalf of SEP, sent a letter to Drinks Americas requesting that the 2005 Warrant be assigned to four individuals, including Plaintiff Philip Kassai, and that it be simultaneously exercised.  See Exhibit Q.

Drinks Americas properly refused SEP's purported assignment and the associated exercise request.

On April 2, 2007, James Ackerman, on behalf of SSC, sent a letter to Drinks Americas requesting that 217,500 shares of Drinks Americas be issued to SSC as a result of SSC's raising $1,350,000 under the 2004 IBA.   SSC also requested that 78,300 of these shares be issued to Plaintiff Philip Kassai directly. See Exhibit R.

Drinks Americas properly refused to issue any shares to SSC or Mr. Kassai.

**SUMMARY JUDGMENT STANDARD**

Summary Judgment should be granted when there is no "genuine issue of material fact" and the undisputed facts warrant judgment of the moving party as a matter of law. Fed. R. Civ. P. 56 (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The moving party must demonstrate the absence of a disputed issue of material fact. Celotex v. Catreet, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986).

The court views the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. However the non-moving party must present "specific facts showing that there is a genuine issue for trial". Fed. R. Civ. P. 56(e). The party opposing summary judgment may not rely on conclusory allegations or unsubstantiated speculation. "Mere allegations or denials from the pleadings will not be sufficient to defeat summary judgment; instead, the party opponent must set forth specific facts showing that there is a genuine issue for trial." Glicksman v. New York City Environmental Control Bd., Slip Copy, 2008 WL 282124 (S.D.N.Y. 2008), citing Anderson v. Liberty Lobby, Inc.at 256.

**ARGUMENT**

Plaintiff alleges three claims for relief in his Complaint: breach of the 2004 IBA, breach of the 2005 Warrant, and unjust enrichment. All three claims fail as a matter of law because Defendant is not liable to Plaintiff under any of these legal theories.

**I. Plaintiff's cause of action for breach of contract under the 2004 IBA should be dismissed**

Plaintiff seeks to recover under a theory of breach of contract. The 2004 IBA on which Kassai bases his cause of action was entered into between Drinks Americas and SSC. Plaintiff therefore lacks privity to claim breach of contract and hence lacks

9

standing. In addition, SSC paid itself the 10% commission to which it was entitled for procuring bridge financing under the 2004 IBA; by doing so, SSC necessarily admitted that it was not entitled to receive any warrants.

### *1. Plaintiff is not a party to or a third-party beneficiary of the 2004 IBA*

Under New York law, unless a party has contractual privity or is a third-party beneficiary of a contract, it lacks standing to enforce the terms of the agreement. Eaton Vance Management v. Forstmann Leff Associates, LLC, Not Reported in F.Supp.2d, 2006 WL 2331009 (S.D.N.Y.2006); citing Highlands Ins. Co. v. PRG Brokerage, Inc., No. 01 Civ. 2272(GBD), 2004 WL 35439, at *14 (S.D.N.Y. Jan. 6, 2004); Wells Fargo Bank Northwest, N.A. v. Energy Ammonia Transp. Corp., No. 01 Civ. 5861(JSR), 2002 WL 1343757 at 1 (S.D.N.Y. June 18, 2002); Eaves Brooks Costume Co. v. Y.B.H. Realty Corp., 76 N.Y.2d 220, 226 (1990).

Plaintiff argues that Drinks Americas owes SSC 217,500 shares of Drinks Americas' stock as compensation for SSC's services under the 2004 IBA, and that 78,300 shares out of the 217,500 were assigned to him by SSC.

First and foremost, Drinks Americas never issued any warrant in favor of SSC entitling SSC to be issued 217,500 shares of Drinks Americas. Plaintiff bases his cause of action on the 2004 IBA itself, which is an investment banking agreement and not a negotiable instrument. SSC could not possibly have assigned to Plaintiff Kassai warrants or shares which were never issued to SSC in the first place.

The only possible interpretation of Plaintiff's claim for issuance of shares under the 2004 IBA is that Kassai is attempting to bring a cause of action for breach of the 2004 IBA itself. It is uncontested that Plaintiff was not a party to the 2004 IBA. He has

therefore no standing to claim the issuance of warrants under section 4.1 (a) of the 2004 IBA.

Plaintiff cannot claim either to be a third-party beneficiary of the 2004 IBA. Under governing precedent, a person who is not a party to a contract can only bring an action for breach of contract if she or he is an intended beneficiary, and not merely an incidental beneficiary of the contract. See Cauff, Lippman & Co. v. Apogee Finance Group, Inc., 807 F.Supp. 1007, 1020 (SDNY 1992). "Although a third party need not be specifically mentioned in the contact [sic] before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement." In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F.Supp. 712, 733 (SDNY 1989); See also Port Chester Electrical Constr. Corp. v. Atlas, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983, 986 (N.Y. 1976). "Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract." In re Gulf Oil/Cities Service Tender Offer Litig., 725 F.Supp. at 733.

Plaintiff was a mere employee of SSC, and the 2004 IBA does not show on its face any intent to benefit Philip Kassai individually. Plaintiff can therefore not claim to be either a party to or a third-party beneficiary of the 2004 IBA. Because he lacks the requisite privity, Plaintiff's cause of action for breach of contract as related to the 2004 IBA should fail as a matter of law.

### 2. By its own actions, SSC admitted that it was never entitled to receive warrants under the 2004 IBA

Even if this Court was to find that Plaintiff has standing to bring a cause of action for breach of contract under the 2004 IBA, SSC admitted by its own actions that it never earned the right to receive warrants under the 2004 IBA. The right to receive warrants as

11

compensation under the 2004 IBA was exclusively associated with SSC raising equity for Drinks Americas, and was coupled with a right to receive a cash compensation of 5% of the amount of equity raised (section 4.1.(a) of the 2004 IBA). In contrast, the 2004 IBA clearly provides in section 4.1.(b) that SSC's compensation for procuring bridge financing was to be 10% of the bridge financing amount. The evidence produced by Plaintiff shows that SSC raised $1,350,000 from lenders, which were given Senior Convertible Promissory Notes as described in the Bridge Financing Term Sheet attached to the 2004 IBA. Upon closing the bridge financing for a total amount of $1,350,000, SSC paid itself the 10% commission to which it was entitled under section 4.1.(b) of the IBA, or $135,000. See Exhibits F to J. The very fact that SSC paid itself the cash commission of 10% provided under the 2004 IBA as compensation for raising bridge financing, and not the cash commission of 5% provided under the 2004 IBA as compensation for raising equity, constitutes an unequivocal admission that SSC was not entitled to receive any warrants from Drinks Americas.

## II. Plaintiff's cause of action for breach of contract under the 2005 Warrant should be dismissed

The 2005 Warrant on which Kassai bases his second cause of action for breach of contract was entered into between Drinks Americas and SEP. Under applicable FINRA rules, SEP, an entity not registered as a broker-dealer, is not authorized to be paid commissions. The 2005 Warrant is therefore invalid and could not possibly have been exercised by SEP and assigned to Plaintiff Kassai. In addition, the 2005 Warrant was issued in error based on SSC's erroneous belief at the time that it was entitled to receive warrants under the 2004 IBA. SEP never provided any consideration in exchange for the

issuance of the 2005 Warrant. As such, the 2005 Warrant is unenforceable for lack of consideration.

### *1. Plaintiff is not a party to or a third-party beneficiary of the 2005 Warrant*

Plaintiff argues that 109,200 shares of Drinks Americas out of the 300,000 shares allegedly owed to SEP under the 2005 Warrant were assigned to him by SEP.

SEP is not a registered broker-dealer. See Exhibit D: Ackerman deposition page 27, lines 14 et seq. As such, under FINRA Conduct Rule 2420, SEP was prohibited by law from receiving any type of commissions or stock compensation from Drinks Americas. The 2005 Warrant is therefore invalid. This fact was acknowledged by the principals of SSC, who specifically acknowledged that in order to be valid, the 2005 Warrant should have been issued to a broker-dealer and could not have been validly issued to SEP. See Exhibit P: SSC letter dated December 16, 2006. See Exhibit D: Ackerman deposition page 27, lines 14 et seq. Because the 2005 Warrant was invalid, SEP could not possibly have exercised it and assigned any rights to any shares of Drinks Americas to Plaintiff.

Moreover, James Ackerman, one of SEP's managing members as well as CEO of SSC, testified that the 2005 Warrant was never assigned to Plaintiff. See Exhibit D: Ackerman deposition page 73 et seq. Kassai has likewise failed to produce any assignment of the 2005 Warrant to him.

Based on the above, Plaintiff lacks the requisite privity to bring a cause of action for breach of the 2005 Warrant against Drinks Americas.

### *2. The 2005 Warrant is Unenforceable*

The evidence shows that the 2005 Warrant was prepared in error by Daniel Myers (giving him the benefit of the doubt), in the belief that SSC was entitled to receive warrants under the 2004 IBA. See Daniel Myers Affidavit ¶ 5. As demonstrated above, SSC was fully paid its agreed-upon compensation of 10% of the amount of bridge financing raised under the 2004 IBA. By paying itself the 10% commission corresponding to the compensation for bridge financing, SSC necessarily admitted that it was not entitled to receive warrants under the 2004 IBA.

In addition, SEP never provided any services to Drinks Americas in exchange for the 2005 Warrant, and never paid any price for the same. As a result, the 2005 Warrant is unenforceable for lack of consideration. See Transatlantic Rapid System v. Decoulos, 270 A.D. 987, 62 N.Y.S.2d 529 (1st Dept. 1946).

### III. Defendant Has Not Been Unjustly Enriched

Plaintiff also seeks to recover under the theory of unjust enrichment. To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expenses; and (3) that equity and good conscience require restitution. In re: Mid Island Hosp. Inc. 276 F.3d 123, 129 (2d Cir. 2002). "Notably, it is the plaintiff's burden to demonstrate that services were performed for the defendant resulting in the latter's unjust enrichment, and the mere act that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." Clark v. Daby, 300 A.D.2d 732, 751 N.Y.S.2d 622, 623 (3d Dept. 2002).

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law created in the absence of any agreement." Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586-87 (2d Cir. 2006). Relief for unjust enrichment is not available where an express contract covers the subject matter. City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (2d Cir. 1988). New York courts recognize that "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter". Clark-Fitzpatrick, Inc. v. Long Island R. Co, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 192, 521 N.Y.S.2d 653, 656 (1987).

The services provided by SSC to Drinks Americas were fully covered by the 2004 IBA. Drinks Americas paid SSC the agreed-upon compensation of 10% - the amount of bridge financing raised by SSC. Because the investment banking services at the crux of this controversy were covered by the 2004 IBA, Defendant's quasi-contractual claim for unjust enrichment cannot lie.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant summary judgment dismissing the Complaint herein with prejudice.

Dated: New York, New York
       March 31, 2008

                        Respectfully submitted,
                        LAW OFFICE OF SHELDON H. GOPSTEIN, ESQ.

                        By: *Sheldon H. Gopstein*
                            Sheldon H. Gopstein
                        130 West 42nd Street, Suite 410
                        New York, NY 10036
                        Tel. (212) 363-2400