IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
PHILLIP KASSAI,                                :
                                                                         : CIVIL ACTION NO.
                                                                         : 07-cv-5590 (RMB)
                      Plaintiff, :

      -against- :

DRINKS AMERICAS HOLDINGS, LTD., :

                    Defendant. :
-----------------------------------------------------------------X

## STATEMENT OF MATERIAL FACTS

1.      Defendant Drinks Americas Holdings, Ltd. ("Drinks Americas") is a publicly traded company which produces, markets, and distributes alcoholic and non-alcoholic beverages.

2.      On or about December 27, 2004, Drinks Americas entered into an Investment Banking Agreement ("the 2004 IBA") with third-party Sloan Securities Corp. ("SSC") by which SSC agreed to seek financing for Drinks Americas in the range of six to ten million dollars for equity or equity-linked securities of Drinks Americas.

3.      The 2004 IBA also contemplated that prior to the consummation of the equity financing, SSC would seek to provide bridge financing to Drinks Americas for up to $550,000 on terms set forth in a Bridge Financing Term Sheet attached to the 2004 IBA.

4.      The 2004 IBA clearly distinguishes between equity financing (referred to in the agreement as "Financing") and bridge financing (referred to in the agreement as "Bridge Financing").

1

5. Section 4.1.(a) of the 2004 IBA provides that SSC's remuneration for successful procurement of equity financing would be 5% of the financing amount, as well as a number of warrants to purchase Drinks Americas securities equal to 5% of the number of securities issued to investors in the financing.

6. Importantly, the 2004 IBA also contains a provision specifically addressing SSC's remuneration for procuring bridge financing to Drinks Americas, as opposed to equity financing. Section 4.1.(b) of the 2004 IBA expressly provides that upon closing of a bridge financing, SSC would receive 10% of the amount procured for bridge financing. It is of particular relevance to note that under this section, SSC is not entitled to receive any warrants whatsoever as compensation for its services.

7. The Bridge Financing Term Sheet attached to the 2004 IBA ("the Bridge Financing Term Sheet") provides that the target amount of the bridge financing is $550,000 and describes the proposed investment vehicles as "Senior Convertible Promissory Notes" and "Warrants".

8. The Bridge Financing Term Sheet expressly provides a conversion price for the Senior Convertible Promissory Notes as well as an exercise price for the Warrants to be issued to secure the Bridge Financing. The Bridge Financing Term Sheet also repeats the terms of SSC's agreed-upon remuneration for procuring such bridge financing, i.e. 10% of the principal amount of Notes issued in the bridge financing.

9. On or about February 24, 2005, Drinks Americas and SSC amended the 2004 IBA to increase the amount of bridge financing sought from $550,000 to $1,000,000.

10. Between December 27, 2004 and May 5, 2005, SSC procured bridge financing to Drinks Americas, for a total amount of $1,350,000 in the form of Senior Convertible Promissory Notes as described in the Bridge Financing Term Sheet. Both James Ackerman, SSC's Chief Executive Officer, and Plaintiff Phillip Kassai acknowledge that the lenders procured by SSC were issued Senior Convertible Promissory Notes.

11. Consistent with the terms of section 4.1.(b) of the 2004 IBA and the Bridge Financing Term Sheet, SSC caused itself to be paid 10% of the amount of bridge financing raised by SSC.

12. Between March 9, 2005 and May 5, 2005, SSC caused five wire transfers to be made from the escrow account where the bridge financing money had been deposited by the various lenders onto Drinks Americas' account.

13. Each and every time SSC ordered said wire transfers, SSC also caused 10% of the monies received from the bridge financing lenders to be wired into SSC's account, for a total of $135,000.[1]

14. On March 9, 2005, SSC requested that $390,000 be wired to Drinks Americas, $50,000 to SSC and $5,000 to SSC's attorneys Littman Krooks.

15. On March 21, 2005, SSC requested that $364,000 be wired to Drinks Americas, $41,000 to SSC and 5,000 to SSC's attorneys Littman Krooks).

16. On April 5, 2005, SSC requested that $153,000 be wired to Drinks Americas and $17,000 to SSC.

---

[1] Although SSC received its exact 10% commission for the bridge financing based on the total raise of $1,350,000, Drinks Americas' net proceeds were reduced by payments made to attorneys and other brokers.

3

17. On April 15, 2005, SSC requested that $162.000 be wired to Drinks Americas and $18,000 to SSC

18. One May 5, 2005, SSC requested that $81.000 be wired to Drinks Americas and $9,000 to SSC

19. On or about May 9, 2005, four days after the last bridge financing monies had been wired to Drinks Americas, Daniel Myers, then SSC's managing director of investment banking, asked SSC's counsel to prepare a Stock Purchase Warrant for 300,000 shares of Drinks Americas' common stock.

20. Daniel Myers then invited Bruce Klein, the non-executive Chairman of Drinks Americas, to come to his office and asked him to sign the Stock Purchase Warrant.

21. Daniel Myers prepared the Stock Purchase Warrant in the belief that SSC was entitled to receive warrants for the work it had just done in raising $1,350,000 for Drinks Americas.

22. Relying on Daniel Myers's representation that SSC had earned the right to the issuance of warrants under the 2004 IBA, Bruce Klein signed the Stock Purchase Warrant ("the 2005 Warrant").

23. The 2005 Warrant provided for the issuance of 300,000 shares of Drinks Americas to Sloan Equity Partners, LLC ("SEP"), an entity affiliated with SSC but not registered with the NASD (now FINRA).

24. Bruce Klein, although the Chairman of the Board of Directors of Drinks Americas, was not an executive officer of Drinks Americas.

25. Shortly after signing the 2005 Warrant, Bruce Klein communicated with Joseph Cannella, securities counsel for Drinks Americas.

26. Joseph Cannella immediately informed Mr. Klein that no warrants were due to SSC since they had procured bridge financing and not equity financing.

27. Joseph Cannella,then communicated with SSC's attorney, Mark Coldwell, of Littman Krooks LLP about the wrongful issuance of the 2005 Warrant. Mr. Coldwell acknowledged that the 2005 Warrant had been presented for Bruce Klein's signature by mistake and represented that it would be destroyed.

28. Sloan Equity Partners, LLC is not permitted under FINRA regulations to receive payment of commissions or other remuneration for financing services allegedly rendered by SSC.

29. Based upon Drinks Americas' understanding that the wrongful issuance of the 2005 Warrant had been resolved and was a non-issue, the parties moved on and continued to do business.

30. In October 2005, the companies signed a second investment banking agreement ("the 2005 IBA").

31. Plaintiff Philip Kassai resigned from his employment with SCC on June 15, 2006.

32. SSC terminated the employment of Daniel Myers in August 2006 following allegations that Mr. Myers had violated SSC's supervisory procedures as well as FINRA rules.

33. On December 15, 2006, James Ackerman, on behalf of SSC, sent a letter to Drinks Americas requesting that Drinks Americas re-issue the May 2005 Warrant to

SSC.

34.     On January 25, 2007, Daniel Myers, acting on behalf of SEP, sent a letter to Drinks Americas requesting that the 2005 Warrant be assigned to four individuals, including Plaintiff Philip Kassai, and that it be simultaneously exercised.

35.     On April 2, 2007, James Ackerman, on behalf of SSC, sent a letter to Drinks Americas requesting that 217,500 shares of Drinks Americas be issued to SSC as a result of SSC's raising $1,350,000 under the 2004 IBA.  SSC also requested that 78,300 of these shares be issued to Plaintiff Philip Kassai directly.

36.     Drinks Americas refused to issue any shares to SSC, SEP or any of their purported assignees.

Dated: New York, New York
       March 28, 2008

                                    LAW OFFICE OF SHELDON H. GOPSTEIN, ESQ.


                                    By: _Sheldon H. Gopstein___
                                        Sheldon H. Gopstein

                                    130 West 42nd Street, Suite 410
                                    New York, NY 10036
                                    Tel. (212) 363-2400

                                    Attorneys for Defendant,
                                    Drinks Americas Holdings, Ltd.